Case 4:20-cv-02485 Document 16 Filed on 01/31/23 in TXSD Page 1 of 15

United States District Court
Southern District of Texas
**ENTERED**
January 31, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KEVIN CHARLES WATSON, TDCJ # 01362699, | § § § § § § § § § § § | |
| Plaintiff, | | |
| VS. | | CIVIL ACTION NO. 4:20-2485 |
| ROCKY MOORE, *et al.*, | | |
| Defendants. | | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kevin Charles Watson, an inmate in the Texas Department of Criminal Justice–Correctional Institutions Division (TDCJ), proceeds *pro se* and *in forma pauperis* in this civil rights action. Watson claims that the defendants violated his Eighth Amendment rights when they failed to provide him with adequate medical care. Because this case is governed by the Prison Litigation Reform Act (PLRA), the Court is required to scrutinize the pleadings and dismiss the complaint in whole or in part if it is frivolous, malicious, or fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915A. Having reviewed the pleadings, the Court will **dismiss** Watson's claims for the reasons explained below.

### I.  BACKGROUND

Watson names four defendants in this lawsuit: (1) Rocky Moore, senior administrative warden at the Wynne Unit; (2) Jamie Williams, medical practice manager at the Wynne Unit; (3) Lannette Linthicum, medical director for TDCJ; and (4) Kate E.

Christopher, a medical practitioner at the Wynne Unit (Dkt. 1, at 3).

Watson's complaint, executed on July 8, 2020, alleged that the defendants failed to provide him with adequate medical care in connection with a left groin mass and related complications. He stated that his medical issue began with a "red bump" on his left upper inner thigh, which "progressed into a lump" that medical personnel referred to as a "left groin mass" and "inguinal lymph node," and that his health was "rapidly deteriorating" (*id.* at 4). He further stated that he previously was "able bod[ied]" but that, "[u]pon the appear[a]nce" of the lump, he developed "severe pain and complications with his left leg, throat and jaw, neck, stomach, chest, ears, testicles[,] and lower back" (*id.*; *see id.* at 5 (stating that his left leg was swollen "to [the point] where he cannot put his foot in a shoe" and that skin peeled from his leg when he removed a sock, "leaving bare flesh that reeks of stench at times"). Watson claimed that the defendants failed to properly treat him and ignored his need for medical care, thus causing him "further significant injury" and "the unnecessary and wanton infliction of pain" (*id.*). He alleged that, although "it is obvious even to a lay person that [he] is in need of hospital[i]zation or other critical medical care," the defendants used "improper and inadequate screening procedures . . . as cost saving devices" (*id.*). His complaint did not provide dates for his symptoms or the defendants' alleged denial of care.

On August 5, 2021, in response to the Court's request for detailed information, Watson submitted a more definite statement of his claims. He explained that his medical issues with his left leg first arose in December 2010 and were diagnosed as a "simple rash" in December 2020, approximately six months after he filed his complaint. He also stated

that he received intravenous antibiotics at Hospital Galveston in December 2020 (Dkt. 12, at 1-2). In response to the Court's questions about specific treatments for his groin mass that were denied by the defendants, Watson protested that "[d]ue to the extensive nature of the question," he could not adequately respond without being granted discovery or access to his medical records (*id.* at 3).[1] He did not respond as directed to the Court's detailed questions about specific treatments he requested, why they were necessary, when and to whom he made the requests, what response he received, or how he was harmed (*id.* at 3-4). However, in a long narrative submitted in lieu of responses to the Court's questions, Watson appeared to claim that he lacked basic information about his condition because medical personnel had not conducted tests, diagnosed him, or attempted to determine the cause of his symptoms (*id.* at 4-5). He stated that he requested a biopsy of his groin mass as well as MRI, CT scans, and x-rays, and that that the groin mass was "eventually removed" on an unspecified date (*id.*).

In response to the Court's questions about the personal involvement of the four defendants, Watson explained that Moore, Williams, and Linthicum are named as defendants because of their administrative roles and because they "are generally responsible for [the] well[-]being, care, treatment, health, and safety of all . . . prisoner[s] under their control and authority" (*id.* at 6; *see* Dkt. 1, at 3). He claimed that he informed Moore in writing about his condition and that Williams and Linthicum were aware of his

---

[1] In the order for a more definite statement, the Court instructed Watson to answer the questions "to the best of his ability based on personal knowledge and the information available to him," and that "legal research or a resort to review of prison records is not required" (Dkt. 8, at 8).

complaints because they responded to his administrative grievances, but that all three supervisors failed to address the situation.

Regarding Christopher, the fourth defendant, Watson claimed that she ignored his requests for medical treatment and for referrals to specialists, instead telling him that nothing could be done and that he was wasting her time (Dkt. 1, at 3; Dkt. 12, at 6-7). He alleged that Christopher saw him in March 2020 or March 2021 for his complaints about his swollen left leg and told him to continue taking water pills, to drink plenty of water, and to elevate his leg, which he claimed is "not the kind of treatment a person would receive for an infection" (*id*. at 5).[2] He claimed that his leg "erupted" and leaked fluid several days after he saw Christopher, but that he then "was administered 12 shots of [a]ntibiotics to get the swelling down" (*id.*).

Along with his complaint, Watson submitted copies of multiple grievances he filed in 2018 and 2019 about his medical condition (Dkt. 1, at 7-13). Although most of the grievances do not refer to a defendant in this lawsuit or any specific person, one complained about Williams' handling of a grievance, and another stated that Watson had refused treatment from Christopher in 2019 because she had told him that she could not help him (Dkt. 1, at 11-12 (Grievance No. 2019141309; Grievance No. 2020010068)). Watson also submitted multiple I-60 forms he sent to TDCJ officials reflecting that, in late 2020 and early 2021, he frequently requested treatment for his swollen left leg and chest pain, among

---

[2] Although Watson stated that this encounter with Christopher was in March 2020, it appears from his chronology that he may have meant March 2021.

other problems (Dkt. 7, at 11-30). For each of the complaints, including all complaints about his left leg, the records indicate that Watson was scheduled for a "sick call" and medical attention in less than a week. Watson asserts that he did not necessarily receive treatment as scheduled (Dkt. 9, at 3).

In December 2022 and January 2023, Watson submitted letters to the Court about medical testing. *See* Dkt. 14 (inquiring about funding for a contrast MRI of his kidneys and chest); Dkt. 15 (submitting a declaration addressed to UTMB that requests a contrast MRI to diagnose the cause of pain in his neck, chest, and stomach).

As relief for his claims, Watson seeks injunctive relief and a declaratory judgment directing the defendants to treat him within prevailing standards of medical care, including proper testing "to determine the cause of [his] medical condition" (Dkt. 1, at 4). In his more definite statement, he did not respond to the Court's questions about the specific injunctive relief he seeks from each defendant, instead stating that the issue had been mooted by the Court's previous denial of temporary injunctive relief (Dkt. 12, at 8).[3] Watson also filed a request to reconsider the denial of temporary injunctive relief, stating that the "record is ample" to show an Eighth Amendment violation (Dkt. 9, at 2; *see id.* at

---

[3] In March 2021, Watson filed a request for emergency injunctive relief regarding his "long untreated" infection in his leg and alleged complications of the infection. *See* Dkt. 7 (complaining of ongoing problems with an untreated infection in his left leg; pain in his stomach, groin, testicles, and chest; tongue blisters; and difficulties with eating, hearing, standing, and walking). The Court denied emergency relief in May 2021 because the records submitted by Watson indicated that officials had responded to his requests and had promptly scheduled appointments for evaluation of each complaint, and furthermore because Watson had not provided specific facts about what medical treatments had been denied or which of the four named defendants was responsible for the alleged denial (Dkt. 8, at 2). In the same order, the Court instructed Watson to file his more definite statement.

4 (alleging that "it is clear that [Watson] has not been provided with adequate medical care and treatment" because the defendants did not conduct diagnostic tests regarding his leg infection "or to determine whether [he] is suffering from lung cancer [] or acute kidney failure, or why [he] is presently undergoing sever[e] pain within his chest, ear, throat, ear, groin and testic[les]").

## II.    LEGAL STANDARDS

### A.    Screening Standards

Because the plaintiff is a prisoner proceeding *in forma pauperis*, the Court is required by the PLRA to screen the case and dismiss the complaint at any time if it determines that the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A(b); 28 U.S.C. § 1915(e)(2)(B). A district court may dismiss a claim as frivolous if it lacks any arguable basis in law or fact. *Samford v. Dretke*, 562 F.3d 674, 678 (5th Cir. 2009). A claim lacks an arguable basis in law "if it is based on an indisputably meritless legal theory." *Rogers v. Boatright*, 709 F.3d 403, 407 (5th Cir. 2013) (cleaned up). It lacks an arguable basis in fact "if, after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Id.* (cleaned up).

A dismissal under § 1915A(b) or § 1915(e)(2)(B) for failure to state a claim is governed by the same standard as a motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Newsome v. EEOC,* 301 F.3d 227, 231 (5th Cir. 2002). Under this standard, a court "construes the complaint liberally in favor of the plaintiff," "takes all facts

pleaded in the complaint as true," and considers whether "with every doubt resolved on [the plaintiff's] behalf, the complaint states any valid claim for relief." *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009) (cleaned up). A court may dismiss a case *sua sponte* and without notice to the plaintiff if the plaintiff has pleaded his best case or if the dismissal is without prejudice. *Brown v. Taylor*, 829 F.3d 365, 370 (5th Cir. 2016); *see Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (holding that a court may *sua sponte* dismiss for failure to state a claim "as long as the procedure employed is fair") (cleaned up); *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986) (holding that where the pleadings, viewed under the individual circumstances of the case, "demonstrate that the plaintiff has pleaded his best case," dismissal on the pleadings is appropriate if the pleadings do not adequately state a cause of action).

### B. Subject Matter Jurisdiction

Federal Rule of Civil Procedure 12(h)(3) requires a court to dismiss an action at any time if the court determines that it lacks subject matter jurisdiction. "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Smith v. Regional Transit Auth.*, 756 F.3d 340, 347 (5th Cir. 2014) (cleaned up). A motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove a plausible set of facts that establish subject matter jurisdiction. *Venable v. La. Workers' Comp. Corp.*, 740 F.3d 937, 941 (5th Cir. 2013). The court must take as true the complaint's well-pleaded factual allegations and view them in the light most favorable to the plaintiff. *In re Mirant Corp*, 675 F.3d 530, 533 (5th Cir. 2012).

### C.   *Pro Se* **Pleadings**

In reviewing the pleadings, the Court is mindful of the fact that the plaintiff proceeds *pro se*. Complaints filed by *pro se* litigants are entitled to a liberal construction and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (cleaned up). Even under this lenient standard a *pro se* plaintiff must allege more than "'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see Patrick v. Wal-Mart, Inc.*, 681 F.3d 614, 617 (5th Cir. 2012). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Additionally, regardless of how well-pleaded the factual allegations may be, they must demonstrate that the plaintiff is entitled to relief under a valid legal theory. *See Neitzke v. Williams,* 490 U.S. 319, 327 (1989); *Geiger v. Jowers,* 404 F.3d 371, 373 (5th Cir. 2005).

## III.   ANALYSIS

### A.   **Eighth Amendment**

Watson claims that the defendants violated his rights in connection with his medical care. He brings his claim under 42 U.S.C. § 1983, which provides a vehicle for a claim against a person "acting under color of state law," such as a state prison official, for a constitutional violation. *See Pratt v. Harris Cty., Tex.*, 822 F.3d 174, 180 (5th Cir. 2016). Because the plaintiff was, at all relevant times, a convicted felon in state prison, his claims regarding denial of adequate medical care are governed by the Eighth Amendment

prohibition against "cruel and unusual" conditions of confinement. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); *see Helling v. McKinney*, 509 U.S. 25, 33 (1993) (the Eighth Amendment "requires that inmates be furnished with the basic human needs, one of which is 'reasonable safety'").

To state a claim under the Eighth Amendment, a plaintiff must allege that the defendant exhibited "deliberate indifference" to his serious medical needs. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Cleveland v. Bell*, 938 F.3d 672, 676 (5th Cir. 2019); *Gobert v. Caldwell*, 463 F.3d 339, 345-46 (5th Cir. 2006). A plaintiff must show that the defendant was aware of facts from which the inference could be drawn of a substantial risk of serious harm; that the defendant subjectively drew the inference that the risk existed; and that the defendant disregarded the risk. *Cleveland*, 938 F.3d at 676. Deliberate indifference is an "extremely high standard." *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001). It requires "more than an allegation of mere negligence, but less than an allegation of purpose or knowledge." *Hinojosa v. Livingston*, 807 F.3d 657, 665 (5th Cir. 2015). A significant risk that the official "should have perceived but did not" is insufficient for a constitutional violation. *Cleveland*, 938 F.3d at 676. Moreover, a delay in medical care can constitute a constitutional violation only if there has been deliberate indifference that results in substantial harm. *Delaughter v. Woodall*, 909 F.3d 130, 136 (5th Cir. 2018).

        **1.**    **Supervisory Defendants**

Watson brings claims against three supervisory defendants: Moore, a warden at the Wynne Unit; Williams, the medical practice manager at the Wynne Unit; and Linthicum,

medical director for TDCJ.  A defendant's personal involvement is an essential element of a civil rights action, meaning that there must be an affirmative link between the injury and a defendant's conduct.  *See id.* at 136-37.  A supervisory official such as a warden may be held liable under § 1983 "only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury."  *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (cleaned up).  A supervisory liability claim also requires a showing of deliberate indifference by the supervisor.  *Westfall v. Luna*, 903 F.3d 534, 552 (5th Cir. 2018); *Porter*, 659 F.3d at 446.

Here, Watson alleges that Moore, Williams, and Linthicum were aware of his medical issues through his written complaints and grievances but failed to take corrective action as to his medical care (Dkt. 1, at 3).  In his more definite statement, he stated that he sued these three defendants because their supervisory roles make them "generally responsible" for the care and treatment of all prisoners under their control (Dkt. 12, at 6).

Watson does not plead that any of the three supervisory defendants were personally involved in his medical treatment.  He also does not plead specific facts regarding how any of the three supervisors violated his rights.  *See* Dkt. 1, at 3-5; Dkt. 12, at 6-7.  To the extent he sues the defendants based solely on their supervisory positions, § 1983 does not permit *respondent superior* liability.  *Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 425 (5th Cir. 2006) ("[t]here is no vicarious or *respondeat superior* liability of supervisors under section 1983"). Additionally, to the extent he bases claims against Williams or Linthicum on their responses to his administrative grievances, his claim must fail.  *See Geiger*, 404 F.3d at

374 (inmate does not have protected interest in having grievances resolved to his satisfaction).[4] Therefore, his claims against Moore, Williams, and Linthicum will be dismissed for failure to state a claim on which relief can be granted.

### 2. Christopher

Watson alleges generally that Christopher, who was located at the Wynne Unit, ignored his complaints and his requests for medical testing or a referral. In response to the Court's order for a more definite statement, which asked for details and dates of Christopher's alleged violations, Watson stated that he was unable to respond without being granted discovery or access to his medical records (Dkt. 12, at 3, 7). However, he failed even to provide basic information that would be within his personal knowledge, as instructed by the Court, such as what testing or referrals he requested from Christopher, what she said in response, or how he was harmed by her failure to act as he requested (*id*. at 5, 7; *see* Dkt. 8, at 8). On the current record, therefore, he fails to adequately plead that Christopher denied a request or that she was subjectively aware of an excessive risk to his health resulting from such a denial. *See Cleveland*, 938 F.3d at 676 (a plaintiff must show that the defendant subjectively drew an inference that a substantial risk of serious harm

---

[4] Watson additionally alleged in his complaint that Linthicum "fail[ed] to implement policies and procedures in accordance with the [prevailing] standard of medical care" (Dkt. 1, at 3). However, he pleads no specific facts about the policies or procedures at issue or how he was harmed, despite the Court's questions requesting specific information about how Linthicum violated his rights (Dkt. 8, at 6-7; *see* Dkt. 12, at 6-7). His conclusory assertions regarding Linthicum's failure to implement adequate policies is insufficient to state an Eighth Amendment claim. *See Iqbal*, 556 U.S. at 678 ("mere conclusory statements" are insufficient to state a claim on which relief can be granted); *Porter*, 659 F.3d at 446 (a supervisory official may be liable if she implements unconstitutional policies that causally result in constitutional injury).

existed); *see also Brauner v. Coody*, 793 F.3d 493, 500 (5th Cir. 2015) (deliberate indifference is not shown when "medical records indicate that the plaintiff was afforded extensive medical care by prison officials," even when the plaintiff alleges that doctors "refus[ed] to accommodate his requests in the manner he desired") (cleaned up).[5]

In any event, even assuming that Watson sufficiently pleaded a constitutional claim against Christopher, his claim must be dismissed because it is moot. A court must *sua sponte* address the threshold issue of mootness, which is essential to the constitutional case-or-controversy requirement and therefore to the court's subject matter jurisdiction. *See Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 424-25 (5th Cir. 2013); *Rocky v. King*, 900 F.2d 864, 866 (5th Cir. 1990). The mootness doctrine "requires that the controversy posed by the plaintiff's complaint be 'live' not only at the time the plaintiff files the complaint but also throughout the litigation process." *Id.* When intervening circumstances "render the court no longer capable of providing meaningful relief to the plaintiff," mootness applies. *Ctr. for Biological Diversity*, 704 F.3d at 425.

---

[5] When discussing Christopher in his more definite statement, Watson lists other medical providers who allegedly ignored his requests for treatment. *See* Dkt. 12, at 6 (listing medical providers Lim, Rothrock, Holmes, Iheanacho, and Ruby). None of the listed persons are defendants in this action. To the extent Watson's statement could be construed as a request for leave to amend his complaint to bring claims against these persons, his request is denied as futile. Under Federal Rule of Civil Procedure 15(a), a court "should freely give leave [to amend] when justice so requires." FED. R. CIV. P. 15(a)(2). However, if the proposed amendment would fail to state a claim upon which relief can be granted, then it should be denied as futile. *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014). Here, Watson only lists the names above and makes a general allegation that they also ignored his complaints and requests for treatment (Dkt. 12, at 6-7). His conclusory statement is insufficient to plead an Eighth Amendment claim against any of the persons listed. *See Iqbal*, 556 U.S. at 678; *Cleveland*, 938 F.3d at 676.

Watson seeks declaratory and injunctive relief against Christopher and alleges that she treated him, or refused to treat him, at the Wynne Unit (Dkt. 1; Dkt. 12). However, since filing this lawsuit, Watson has been transferred to the Pack Unit (Dkt. 13). The injunctive and declaratory relief he seeks from Christopher therefore is not available. The Fifth Circuit has clearly held that injunctive and declaratory relief cannot remedy a past harm:

> Requests for injunctive and declaratory relief implicate the intersection of the redressability and injury-in-fact requirements. The redressability requirement limits the relief that a plaintiff may seek to that which is likely to remedy the plaintiff's alleged injuries. Because injunctive and declaratory relief "cannot conceivably remedy any past wrong," plaintiffs seeking injunctive and declaratory relief can satisfy the redressability requirement only by demonstrating a continuing injury or threatened future injury.

*Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019) (footnotes omitted); *see Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001) (even if inmate were able to establish an Eighth Amendment violation based on his alleged exposure to asbestos particles while incarcerated, his transfer to a different correctional institution "rendered his claims for declaratory and injunctive relief moot"); *Pagoaga-Castro v. Pierson*, 790 F. App'x 652 (5th Cir. 2020) (inmate's requests for injunctive and declaratory relief had been mooted on appeal by inmate's transfer from state to federal custody).

Because Watson's claim against Christopher is moot, the Court lacks subject matter jurisdiction and the claim must be dismissed under Federal Rule of Civil Procedure 12(h)(3).

### B.     Request for Reconsideration

In May 2021, the Court denied Watson's request for temporary injunctive relief, relying in part on Watson's failure to provide specific facts about denied treatments or the four defendants in this suit. *See* Dkt. 8, at 2 ("Watson does not provide specific facts about the particular medical treatments that were denied or which of the four named Defendants was responsible for the alleged denial" (citing, *inter alia*, *Jones v. Texas Dep't of Criminal Justice*, 880 F.3d 756, 759 (5th Cir. 2018))). Watson then filed objections and a request for reconsideration (Dkt. 9). He argued that his repeated requests for treatment demonstrate that his requests were ignored and that, because officials failed to conduct diagnostic tests, they clearly failed to provide him with adequate medical care.  He also argued that the Court failed to consider an affidavit from another inmate attesting to Watson's symptoms, which Watson argues shows that his medical condition is obvious even to a layperson (*id.* at 5-6; *see* Dkt. 7, at 9 (declaration of Kirk Wayne McBride Sr., dated March 11, 2021, attests to Watson's swollen leg, severe pain, untreated infection, and deteriorating condition).

The Court has carefully considered Watson's arguments and all records he submitted, including the McBride declaration.  However, his request for reconsideration mentions only two of the four defendants, and does not specifically allege personal involvement by the two he mentions. *See* Dkt. 9, at 4 (alleging that "[m]edical personnel such as Jamie Williams and [p]rison personnel such as Rocky Moore have no idea as to what is causing [Watson] to undergo excruciating pain, because it is not a problem and/or worry for them in the care, safety, and health of [Watson]"). In other words, as in his

original request for injunctive relief, Watson does not sufficiently demonstrate that injunctive relief is warranted against any defendant.

For the reasons stated above and in the prior order denying temporary injunctive relief, Watson's request for reconsideration will be denied.

### IV.   CONCLUSION

For the reasons explained above the Court now **ORDERS** as follows:

1. Watson's claims against Moore, Williams, and Linthicum are **DISMISSED with prejudice** under 28 U.S.C. § 1915A(b) and 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim upon which relief can be granted.

2. Watson's claims against Christopher are **DISMISSED without prejudice** for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(h)(3).

3. Watson's request to reconsider the Court's denial of temporary injunctive relief (Dkt. 9) is **DENIED**.

4. All other pending motions, if any, are **DENIED** as moot.

The Clerk will provide a copy of this order to the parties.

SIGNED at Houston, Texas, on _____January 31_____, 2023.

_____
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE